UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL DAVIS, 91-A-3061,

                Plaintiff,                02-CV-0545(Sr)

v.

DAVID L. BARRETT,

                Defendant.

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #20.

Plaintiff, proceeding *pro se*, commenced this suit pursuant to 42 U.S.C. § 1983 alleging that defendant Barrett violated his constitutional right to due process during the course of an administrative segregation hearing at the Elmira Correctional Facility ("Elmira"), on January 16, 2001.  Dkt. #1.

Currently before the Court is defendant's motion for summary judgment.  Dkt. #57.  For the following reasons, defendant's motion is granted.

## **BACKGROUND**

On January 3, 2001, Sergeant J. Perry issued an administrative segregation recommendation for the plaintiff, Samuel Davis, which stated as follows:

> Over the past two weeks I have received confidential information from three separate sources indicating that inmate Davis has been involved in fights, extortion and possible drug involvement. The information was verified with a fourth confidential source who has been reliable in the past. The main theme of the accusations is that Davis targets weaker inmates and then extorts them for Commissary products. There is [sic] strong statements that Davis uses a weapon sometimes.

Dkt. #58, p.22.

On January 16, 2001, the Commissioner's Hearing Officer ("CHO"), defendant Barrett, conducted a hearing with respect to the recommendation. Dkt. #58, Exh. A. During the course of the hearing, plaintiff requested that CHO Barrett interview the confidential informants outside of his presence so that he could "see their credibility." Dkt. #58, p.9. CHO Barrett denied plaintiff's request. Dkt. #58, p.15. In support of his motion for summary judgment, CHO Barrett opined that attempting to interview the confidential informants outside of plaintiff's presence

> would pose a risk to them because I believed it would be difficult to conduct such an interview without another inmate becoming suspicious of what was happening and reporting his suspicion to the Plaintiff, an influential inmate. I was aware that Sgt. Perry had interviewed the confidential informants himself, and I had confidence in his ability to assess their credibility. Accordingly, I saw no need to interview them myself, as I thought it would jeopardize institutional safety and put the confidential informants' lives in danger.

Dkt. #58, ¶ 8.

Relying upon the administrative segregation recommendation written by Sgt. Perry, CHO Barrett found plaintiff involved in the extortion of inmates. Dkt. #58, p.20. Plaintiff complained that CHO Barrett hadn't interviewed Sgt. Perry and didn't indicate why Sgt. Perry had not been called to testify at the hearing. Dkt. #58, p.15. CHO Barrett responded that plaintiff had not requested Sgt. Perry as a witness. Dkt. #58, p.16. CHO Barrett also noted that he "read some of the notes . . . that were supplied along with my copy of the hearing, the confidential information." Dkt. #58, p.16.[1] Plaintiff asked to see that information "with the names deleted," but CHO Barrett refused the request on the ground that "it's confidential information." Dkt. #58, p.16.

Plaintiff remained in administrative segregation until February 26, 2001, when he was transferred to the Attica Correctional Facility and housed in the general population. Dkt. #61, ¶ 2. Inmates placed in administrative segregation at Elmira are housed in Special Housing Units ("SHU"), where they are confined to their cells except for one hour of exercise daily, a minimum of two showers a week, unlimited legal visits and one non-legal visit per week. Dkt. #62, ¶ 5. Inmates placed in administrative segregation may receive counseling services and access to sick call on a daily basis, are generally afforded the opportunity to participate in a cell study program, and are permitted books and periodicals from the law library and general library. Dkt. #62, ¶ 5. Unlike inmates placed in SHU for disciplinary reasons, inmates in administrative

---

[1] The confidential information, which was provided to the Court *in camera,* includes a memorandum from Sgt. Perry stating that an unnamed "reliable informer" informed him that some inmates were concerned that plaintiff was extorting commissary products from "weaker inmates;" a signed statement from an inmate claiming plaintiff attempted to stab him on a stated date and location; and an unsigned note from an inmate claiming that plaintiff attempted to "cut" the author with a razor plaintiff had hidden in his hair.

-3-

segregation may possess additional personal property and are permitted to make specified commissary purchases on a monthly basis from the commencement of their confinement to SHU.  Dkt. #62, ¶ 6.  Captain John Colvin, who made rounds of SHU during the duration of plaintiff's administrative segregation, declares that these rules were complied with during plaintiff's administrative segregation and denies any atypical conditions with respect to hygienic standards within SHU.  Dkt. #59, ¶¶ 2-3.  Elmira has no record of any grievances concerning the conditions of plaintiff's confinement in SHU.  Dkt. #60, ¶ 3.

Plaintiff declares that he was confined to SHU 23 hours per day and subjected to a loss of packages and limitation of his commissary privileges, visitation, personal property, participation in religious services and other events.  Dkt. ## 65 & 67.  Plaintiff also complains that his cell lacked a desk, locker, chair or tables and that he was provided an "unhygienic body waste infected mattress."  Dkt. ##65 & 67.  Plaintiff further complains that inmates threw feces and urine.  Dkt. #65.

On March 6, 2001, Donald Selsky, Director of Special Housing/Inmate Discipline, reversed CHO Barrett's determination.  Dkt. #58, ¶ 3.  In support of this decision, Director Selsky stated as follows:

> Report was based on investigation and confidential information.  Author did not testify and no assessment of reliability was made on the confidential information.

Dkt. #58, p.18.

**DISCUSSION AND ANALYSIS**

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

**Due Process Claim**

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996).

Liberty Interest

Defendant argues that the duration of plaintiff's confinement in administrative segregation is insufficient to demonstrate a constitutionally protected liberty interest. Dkt. # 64, pp.3-6.

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richardson*, 364 F.3d 60, 64 (2d Cir. 2004), *quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id., quoting Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999). In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id*. at 64-65.

In the instant case, plaintiff was confined to administrative segregation from January 3, 2001 until February 26, 2001, when he was transferred to the Attica

-6-

Correctional Facility and housed in the general population.  Dkt. #61, ¶ 2.  In an unpublished opinion, the Court of Appeals for the Second Circuit determined that 45 days disciplinary confinement in SHU, absent evidence of conditions more onerous than those generally present in the SHU, was insufficient to establish a protected property interest.  *Smith v. Taylor*, No. 03-0202, 2005 WL 2019547 (2d Cir. Aug. 23, 2005).

In the instant case, plaintiff's conditions were less onerous than inmates in SHU for disciplinary confinement in that plaintiff was permitted, *inter alia*, additional personal property and immediate access to monthly commissary purchases.  Dkt. #62, ¶ 6.  Moreover, the Court notes that although plaintiff filed a complaint about being strip searched prior to the administrative segregation recommendation and filed complaints seeking medical equipment during his confinement, there is no evidence of any complaints by plaintiff regarding unhygienic conditions in SHU.  Dkt. #67-2, pp.3-6.  Accordingly, the Court finds that plaintiff has failed to demonstrate that the conditions of his administrative confinement from January 3, 2001 through February 26, 2001 created a constitutionally protected liberty interest.  *See Sealey*, 197 F.3d at 589 (101 days of administrative segregation in Auburn's SHU, where plaintiff complained of incessant noise and of inmates throwing feces on occasion, was not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").  As a result, defendant's motion for summary judgment is granted.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted.  Dkt. #57.  The Clerk of the Court is directed to enter judgment in favor of the defendant.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED:   Buffalo, New York
         January 15, 2007

                                        S/ H. Kenneth Schroeder, Jr.
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**